UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION
CIVIL ACTION NO. 1:15-CV-599

| | | |
|---|---|---|
| FREDDIE WAYNE HUFF, II, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NORTH CAROLINA DEPARTMENT OF | ) | |
| PUBLIC SAFETY, an agency of North | ) | **DEFENDANTS NORTH CAROLINA** |
| Carolina, DIVISION OF STATE HIGHWAY | ) | **DEPARTMENT OF PUBLIC** |
| PATROL, a principal subunit of an agency of | ) | **SAFETY, DIVISION OF STATE** |
| the State of North Carolina, FRANK L. | ) | **HIGHWAY PATROL, FRANK L.** |
| PERRY, in his official capacity as Secretary | ) | **PERRY, WILLIAM J. GREY,** |
| of the Department of Public Safety and | ) | **JENNIFER A. HARRIS AND** |
| individually; WILLIAM J. GREY, in his | ) | **JOSEPH A. COTTON'S** |
| official capacity as Commanding Officer of | ) | |
| the Division of State Highway Patrol and | ) | **MEMORANDUM IN SUPPORT OF** |
| individually; JENNIFER A. HARRIS, in her | ) | **MOTION FOR SUMMARY** |
| official capacity as the Director of | ) | **JUDGMENT** |
| Professional Standards for the Division of | ) | |
| State Highway Patrol and individually; and | ) | |
| JOSEPH A. COTTON, in his official capacity | ) | |
| as the Director of Internal Affairs with the | ) | |
| Division of State Highway Patrol and | ) | |
| individually, | ) | |
| | ) | |
| Defendants. | ) | |

## STATEMENT OF THE CASE

Plaintiff commenced this action by filing a summons and complaint alleging violations of

42 U.S.C. § 1983 and deprivation of his rights guaranteed by the United States Constitution and

the North Carolina Constitution. (D.E. 1). Defendants timely filed answers denying the

material allegations of Plaintiff's complaint. (D.E. 11). On 6 July 2016 the parties filed a joint

stipulation of dismissal as to Defendant Frank L. Perry. (D.E. 22).

1

**STATEMENT OF THE FACTS**

On 17 March 2013 Freddie Wayne Huff, II ("Plaintiff") began his employment with the State of North Carolina as a Highway Patrol Trooper. (Comp. ¶ 27) Immediately prior to this employment with the Highway Patrol, Plaintiff was employed as a municipal police officer with the city of Lexington in Davidson County, North Carolina. (Comp ¶ 25) Plaintiff had no prior employment with the State of North Carolina.

A civilian was found to be in possession of what appeared to be an authentic State Highway Patrol campaign hat. (Comp ¶ 31)  When questioned, the civilian informed patrol officers that he bought the hat from Plaintiff on the auction site eBay, and Plaintiff confirmed that he sold the hat on the site. (Ex. 5, p 1, ln 5-33).  Lt. Donna Carter ("Carter) and F/Sgt Brent Snotherly ("Snotherly") were assigned to conduct an investigation into the sale of the hat. (Ex. 1, Cotton Deposition, p 3 ln. 1-2). The investigation revealed that Plaintiff had not in fact sold a highway patrol hat, but he had sold his state issued shoes. (Comp ¶ 31; Ex. 5, p 6, ln 11-39, p. 7) Plaintiff initially denied selling the shoes. (Ex. 5, p. 3, ln. 7-9; Ex. 2, Carter Deposition  ln. 7-15) Plaintiff later changed his answer when confronted with an eBay listing showing the shoes for sale. (Ex. 5. p 3 ln. 16-18, p 4 ln. 3; Ex. 1, Cotton Deposition p 12 ln. 15-17, p 13, ln.7-11 ). Plaintiff had listed the items as being located in Ohio because he "really didn't want this to come to light." (Ex. 1, Cotton Deposition, p 10 ln. 25, p 11 ln. 1-2; Ex. 5, p 2, ln. 9-37)

The results of the investigation were turned over to Captain Joseph Cotton ("Cotton"), the commander of the Internal Affairs unit.  Cotton determined that plaintiff had violated three Highway Patrol Policies: Conformance to Laws; Violation of Rule; and Truthfulness.  Cotton drew up charge sheets accusing Plaintiff of these violations. (Ex.  1, Cotton Deposition p 1 ln 9, p 3  ln 9)  Cotton based his decision to charge plaintiff with the violations in the Internal Affairs

interview conducted by Carter and Snotherly. ( Ex 1, Cotton Deposition p 14 ln 19-22 ). There was no input into Cotton's decision to charge Plaintiff from anyone outside of the Patrol. Cotton had never heard the name Scott Stanbury ("Stanbury"), and did not know anything about Plaintiff's allegations about Stanbury until after the Plaintiff was terminated. (Ex. 1, Cotton Deposition, p 14 ln 25, p 15 ln 8-16) Historically, the Highway Patrol dismisses members who have a substantiated truthfulness violation. (Ex 1, Cotton Deposition p 9 ln 10-18)

Cotton turned the investigation over to his immediate supervisor, Major Jennifer Harris ("Harris"), Director of Professional Standards. In a memorandum to the commander of the State Highway Patrol, Colonel William Grey ("Grey), Harris recommended that Plaintiff be dismissed from the Highway Patrol based on the three violations Cotton had substantiated. (Ex. 1, Cotton Deposition p 5, ln 20-22 )

After reviewing the report of investigation, Grey accepted Harris' recommendation. Grey had no input into the initial charges lodged against Plaintiff. (Ex. 3, Grey Deposition p 1 ln 5-8) Grey ordered that Plaintiff be placed on investigatory placement and given a predisciplinary conference ("PDC"). The PDC notice gave plaintiff notice of each of the allegations against him. (Ex 1, Cotton Deposition, p 5; Ex.3, Grey Deposition, p 6 ln 12-18). During the PDC, Plaintiff was allowed to present mitigating evidence in his favor. (Ex 1, Cotton Deposition, p 6 ln 3-7, p 7 ln 23). Grey dismissed Plaintiff from the North Carolina State Highway Patrol on 21 April 2014 (Comp. ¶ 20) Grey based his decision entirely on Plaintiff's conduct. (Ex. 3, Grey Deposition, p 2 ln 3-6, p 4 ln 13-25, p 5 ln 1, p 7 ln 23-25, p 8 ln 1-12 ).

After his dismissal Plaintiff alleged that that internal investigation was improper in that other Troopers engaged in similar activity for which he was terminated and also that he was actually terminated because he had stopped a person for DWI, Scott Stanbury, who had political

connections. (Comp ¶ 3) However, plaintiff never mentioned either the allegedly similar behavior from other Troopers or Stanbury during the internal investigation. It was not until after Plaintiff's termination that he brought up these issues. (Ex. 1, Cotton Depo. p. 14 ln 25; Ex. 3 Grey Deposition p 3 ln 16-21; Ex 4, Plaintiff's Admissions, #4, 8) Stanbury denied contacting anyone in state government about his DWI or Plaintiff and, in fact, testified that he tried to hide the fact that he had received a DWI from everyone except his attorney. (Ex. 10, Stanbury Deposition p 1 ln 11, pp 2-4). Additionally, Plaintiff alleged that his termination resulted in over 100 DWI offenses being dismissed by the Forsyth County District Attorney. (Comp ¶ 44) However, in his entire career with the State Highway Patrol, Plaintiff had only made 55 DWI arrests. (Ex. 1 Cotton Deposition, p 4, ln. 20)

North Carolina law allows only career state employees access to the grievance process. A career state employee is defined as an employee who has been continuously employed by the state for a period of twenty-four months. N.C.G.S. § 126-1.1 (2013) North Carolina does allow some types of local government employees to count local government time toward the twenty-four months; however, Plaintiff did not qualify as one of these local government employees. N.C.G.S. § 126-5(a)(2) (2013).

With only thirteen months of continuous state service, Defendant North Carolina Department of Public Safety ("NCDPS") did not consider Plaintiff to be a career state employee, NCDPS and initially refused him access to the internal grievance process. Plaintiff filed a contested case petition in the N.C. Office of Administrative Hearings ("OAH") on 12 May 2014 alleging that he was terminated without just cause and that he qualified as a career state employee pursuant to N.C.G.S. § 126-5(a)(2)(d). (Ex. 6) The Administrative Law Judge ordered NCDPS to allow Plaintiff to complete the grievance process.

After Plaintiff completed the internal grievance process, NCDPS filed a motion for summary judgment in the OAH arguing that Plaintiff was not a career state employee with the right to continued state employment and that he was therefore not entitled to grieve his termination. (Ex. 7) The OAH agreed with NCDPS and granted summary judgment in favor of NCDPS and dismissed Plaintiff's contested case with prejudice. (Ex. 8) Plaintiff appealed to the North Carolina Court of Appeals. In an unpublished opinion, the court ruled that Plaintiff had no property interest in his continued employment as a State Trooper because he was not a career state employee pursuant to N.C.G.S. 126-5(a)(2)(d). *Huff v. N.C. Dept. of Public Safety*, 782 S.E.2d 926, 2016 N.C. App. Lexis 225 (2016) (Ex. 9). While the matter was pending in the N.C. Court of Appeals, Plaintiff filed the instant case. (Comp ¶ 24)

## ARGUMENT

*Standard for Summary Judgment*

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P.. 56(c). The movant has "the initial responsibility of informing the district court of the basis for its motion, which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265 (1986). "The burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 326.

In response, the nonmoving party cannot rest on bare pleadings alone, but must use the above listed evidentiary tools to designate specific material facts showing there is a genuine issue for trial. *Id.* at 324. A fact is "material" if its resolution is outcome-determinative under

5

governing law and would prevent the party against whom it is resolved from prevailing. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The task before the trial court when resolving a motion for summary judgment is not to make findings of fact, but to determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 250-252, 91 L.Ed. 2d at 213-214.

Thus, while the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor, a bare contention that an issue of fact exists is insufficient to create a factual dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Nor is a genuine issue of material fact created by making two conflicting statements of fact. *Id.*; *see also Halperin v. Abacus Technology Corp.*, 128 F.3d 191, 198 (4th Cir. 1997). A nonmoving party who relies on "mere belief or conjecture, or the allegations and denials contained in his pleadings," cannot avoid summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. at 324. Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP*, 213 F. 3d 175, 180 (4th Cir. 2000).

Also, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380; 167 L. Ed. 2d 686 (2007). Furthermore, "the plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify *affirmative evidence* from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) (emphasis added).

At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Fed. Rule Civ. P. 56(c). In response to a properly supported motion for summary judgment, where the moving party has carried its burden under Rule 56(c), "the opponent must do more than simply show that there is some metaphysical doubt as to the material facts…Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Industr'l Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

In *Anderson,* supra, the Court quoted itself from *Improvement Co. v. Munson*, 14 Wall. 442, 448 (1872) stating:

> Nor are judges any longer required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party. Formerly it was held that if there was what is called a scintilla of evidence in support of a case the judge was bound to leave it to the jury, but recent decisions of high authority have established a more reasonable rule, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251 (U.S. 1986). Additionally, a judge is to "view the evidence presented through the prism of the substantive evidentiary burden," or in the present case, preponderance of the evidence. *Id.* at 251-2. The Court proceeded to explain the

7

reasoning behind why a judge should view the evidence through the lens of the required standard:

> This conclusion is mandated by the nature of this determination. The question here is whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of evidence required by the governing law or that he did not. Whether a jury could reasonably find for either party, however, cannot be defined except by the criteria governing what evidence would enable the jury to find for either the plaintiff or the defendant: It makes no sense to say that a jury could reasonably find for either party without some benchmark as to what standards govern its deliberations and within what boundaries its ultimate decision must fall, and these standards and boundaries are in fact provided by the applicable evidentiary standards.

*Id.* Moreover, a trial judge has an affirmative duty to prevent factually unsupported claims from proceeding to trial. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998).

I.  **Plaintiff has failed to establish that he had a constitutional right to continued State Employment**.

The general basis for Plaintiff's entire complaint is that the Defendants deprived him of a protected right to continued employment as a N.C. State Trooper.  Interpreting the general statutes governing career state employment, the N.C. Court of Appeals ruled that Plaintiff possessed no such right. *Huff*, 2016 N.C. App Lexis at *9.  Because the N.C. court has already decided against Plaintiff on a required element of his cause, that is, a constitutionally protected property interest in his employment, Plaintiff's entire case must fail. "Federal courts must give the same preclusive effect to a state court judgment as the forum that rendered the judgment would have given it." *Sartin v. Macik*, 535 F.3d 284, 287, 2008 U.S. App. Lexis 15959, **7 (2008)

II.  **Plaintiff fails to make out plausible claims for a violation of his constitutional right to substantive due process.**

8

Plaintiff alleges a denial of substantive due process rights afforded by the North Carolina Constitution and the 14th Amendment to the United States Constitution by the actions of the Defendants. Substantive due process is an extremely narrow concept. *Love v. Pepersack*, 47 F.3d 120, 122 (4th Cir. 1995), *cert. denied*, 516 U.S. 813 (1995). When reviewing a claim for violation of substantive due process, the courts must look as a threshold matter to whether the property interest being deprived is fundamental under the Constitution. *Logar v. W.Va. Univ. Bd. Of Governors*, 2013 U.S. Dist. LEXIS 118830, (N.D.W.Va. 2013) In order to constitute a fundamental right under the Constitution, the alleged right at issue must be "…so rooted in the traditions and conscience of our people as to be ranked as fundamental…" *Logar,* 2013 U.S. Dist. LEXIS at \*16. If the right is not so recognized, then substantive due process does not apply.

Employment claims are not fundamental rights entitled to substantive due process protection. In *Logar*, the court noted that "…[m]ost Circuit Courts of Appeal have declined to find that a right to continued public employment is a fundamental property interest entitled to substantive due process protection." *Logar* 2013 U.S. Dist. LEXIS at \*17. For example, the Eighth Circuit, sitting en banc, refused to apply substantive due process to an employee's termination:

> To hold otherwise would be to disregard Supreme Court precedent and the decisions of our sister circuits, which hold that an employee's occupational liberty is not protected by substantive due process when the employee is discharged by a governmental employer. We would also be abusing § 1983 to intrude upon and second-guess at-will employment decisions made by state actors, notwithstanding the Supreme Court's admonishment that "[t]he federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies" and "[t]he United States Constitution cannot feasibly be construed to require federal judicial review for every such error." *Bishop v. Wood*, 426 U.S. [341], 349-50, 96 S. Ct. 2074, 48 L. Ed. 2d 684 (footnote omitted). Furthermore, we would be distorting the Constitution to supplant Missouri state law and create a federal tort regulating state employment decisions. *Cf. Collins v. City of Harker Heights*, 503 U.S. [115], 128, 112 S. Ct. 1061, 117 L. Ed. 2d 261

9

(explaining that "state law, rather than the Federal Constitution, generally governs the substance of the employment relationship" and the "Due Process Clause does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society" (quotations omitted)). . . .

*Singleton v. Cecil*, 176 F.3d 419 (8th Cir. 1999).

### III. Plaintiff has failed to state a claim against Defendant N.C. Department of Public Safety, Division of State Highway Patrol for any alleged constitutional violations.

A government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. *Monell v. Dep't of Soc. Servs.* 436 U.S. 658, 694 (1978). Thus N.C. State Highway Patrol, an agency of the State of North Carolina, cannot be held liable solely because of the alleged actions of the other named Defendants.

42 U.S.C. § 1983 was created to be a vehicle for private citizens to access federal court to seek a remedy for violations of their constitutional rights by persons using the claimed authority of state law. *See Mitchum v. Foster*, 407 U.S. 225, 239 (1972). The statute provides, in part:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

42 U.S.C. § 1983 (2015). It has been very clearly held that a state is not a person within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police,* 491 U.S. 58 (1989). This principle is not a determination that the immunity shields the state agency from liability but rather that there can be no action against a state agency at all pursuant to § 1983. *Id.* Indeed, the word "persons" as provided in the statute simply excludes the sovereign. *Id.* at 59. In *Will*, where the plaintiff brought suit for various constitutional violations against the Michigan Department of State Police, the Supreme Court held such an action was properly dismissed. *Id.*

10

at 71. Therefore, the plaintiff's § 1983 actions against the state agency, NC State Highway Patrol, cannot stand, and must be dismissed.

**IV.** **The State Agency Defendants and the individual Defendants in their official capacity are entitled to Sovereign Immunity from the United States Constitution Claim.**

It is well settled that State agencies and individuals sued in their official capacities are immune from suit based on sovereign immunity. *Kawaii Am. Corp. v. Univ. of North Carolina*, 152 N.C. App 163, 165, 567 SE.2d 215, 217 (2002*); Harwood v. Johnson*, 326 N.C. 231, 388 S.E.2d 439 (1990). Under the doctrine of Sovereign Immunity, these defendants are immune from suit absent a waiver of immunity. *Gammons v. N.C. Dept. of Human Resources*, 344 N.C. 51, 54, 472 S.E.2d 722, 723 (1996). At all relevant times, the individually named Defendants were employees of NCDPS acting in their official capacities. The NCDPS is an agency of the State of North Carolina funded by the North Carolina General Assembly. N.C.G.S. § 143B-6 (2013). A judgment against this agency would be a judgment against the State itself. *Huang v. Board of Governors of UNC*, 902 F.2d 1134, 1138 (4th Cir. 1990). Accordingly, for purposes of this action, the NCDPS and its officials are alter egos of the State of North Carolina, and the doctrine of sovereign immunity operates to bar Plaintiff from pursuing his claims.

**V.** **Plaintiff's allegations fail to make out plausible claims under 42 U.S.C. § 1983 for Violations of any Constitutional rights.**

Plaintiff alleges a deprivation of his substantive and equal protection rights afforded by the Fourteenth Amendment under 42 U.S.C. § 1983. As Plaintiff has only alleged a violation of his rights under the Fourteenth Amendment, and for the reasons set forth in argument I above, Plaintiff has failed to establish the existence or violation of any rights. Furthermore, the Defendants in their individual capacities are entitled to Qualified Immunity. "A government official is entitled to qualified immunity from civil damages for performing discretionary

11

functions when his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Taylor v. Waters*, 81 F/3d 429, 433 (4th Cir. 1996)(*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct.2727(1982))

The resolution of a qualified immunity defense is a two pronged inquiry: "First [the court] must decide whether a constitutional right would have been violated on the facts alleged…Next, assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable [person] that his conduct violated that right." *Bailey v. Kenney*, 349 F.3d 731, 739 (4th Cir. 2003)(quotation marks and citation omitted). Here, the inquiry ends with the first question. Because Plaintiff possessed no right to continued state employment, no constitutional right could have been violated. Additionally, continuing to the second inquiry, Defendants relied on the plain language of the general statute defining career state employment and determined that Plaintiff did not qualify. Despite Plaintiffs attempt to morph his time with a local law enforcement agency into state employment, the North Carolina appellate court agreed with Defendants. Under these circumstances, the Defendants' position was clearly established, and it was Plaintiff's interpretation of the state law that was erroneous. Therefore, each Defendant is entitled to qualified immunity under the facts alleged.

VI.    **Plaintiff's Equal Protection Claims against Defendants must fail.**

Count A of the Complaint alleges a denial of equal protection afforded by the North Carolina Constitution and the 14th Amendment to the United States Constitution by the actions of the named Defendant state agency and the individual defendants in their official and individual capacities. Plaintiff alleges that his complaint for the violation of the Equal Protection clause is based upon his being treated differently than "similarly situated Troopers." (Comp. ¶ 61).

12

Plaintiff's claim is without merit. First, as discussed above, Plaintiff possessed no constitutionally protected right to continued employment. Therefore, the Defendants could not have deprived him of any such right as required by § 1983. Second, Plaintiff has not forecast any evidence showing comparable Troopers with whom he is similarly situated. Plaintiff alleges that he was "similarly situated to other SHP Troopers who "sold their shoes" and who "made reasonable mistakes in balancing written and unwritten policies of the SHP" (Comp ¶ 64, 65); however, Plaintiff has not forecast any evidence that any other trooper sold his equipment, <u>and</u> was untruthful about it during an internal investigation. One basis of his termination was the violation of the Patrol's truthfulness policy, and all of the evidence demonstrates that the North Carolina Highway Patrol routinely dismisses members who are found to have violated the truthfulness policy.

## CONCLUSION

Plaintiff did not possess any constitutionally protected right to continued State employment as a North Carolina Highway Patrol Trooper. Moreover, the NCDPS was under no obligation to allow Plaintiff to complete the grievance process or to give him any of the rights afforded to career state employees pursuant to N.C.G.S. § 126 *et seq*. As a result, Defendants have not deprived Plaintiff of any constitutional right or privilege. Furthermore, the doctrine of Sovereign Immunity protects the state agency and state actors in their official capacity from suit. Finally, the state actors in their individual capacity are protected by qualified immunity. Plaintiff had no clearly established rights of which Defendants deprived him. Defendants respectfully request that their Motion for Summary Judgment be granted and that Plaintiff's Complaint be DISMISSED WITH PREJUDICE.

13

This the  1st  day of August, 2016.

ROY COOPER
Attorney General

/s/Tammera S. Hill
Tammera S. Hill
Assistant Attorney General
N.C. State Bar No. 23172
N.C. Department of Justice
P.O. Box 629
Raleigh, North Carolina 27602-0629
Telephone:     (919) 716-6500
Fax:               (919) 716-6761
Email: thill@ncdoj.gov

*******************************

## CERTIFICATE OF SERVICE

I hereby certify that on this day a copy of the foregoing DEFENDANTS' NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, DIVISION OF STATE HIGHWAY PATROL, FRANK L. PERRY, WILLIAM J. GREY, JENNIFER A. HARRIS, AND JOSEPH A. COTTON'S MEMORANDUM OF LAW IN SUPPORT OF was filed electronically via the Court's CM/ECF system which provides electronic notification to Plaintiff's counsel as follows:

Randolph M. James
Andrea L. Davis
RANDOLPH M. JAMES, P.C.
Post Office Box 20069
Winston-Salem, NC  27120

This the  1st   day of August, 2016.

/s/Tammera S. Hill
Tammera S. Hill
Assistant Attorney General

14