MAJOR JOSEPH A. COTTON Major Joseph A. Cotton

Page 10

Q. Lillington?

A. I live near Dunn, the town of Dunn.

Q. Okay.

A. Uh-huh (yes).

Q. So you commute?

A. Yes, sir.

Q. In this particular case, you initiated charges against Trooper Huff.

A. Yes, sir.

Q. And I'm sorry, there's one question I forgot to ask. What have you reviewed prior to coming here today?

A. I reviewed the investigative file, the internal affairs file, all the investigation transcripts, the attachments to that, the documentation that goes with the whole process from beginning the initial -- the initial circumstances that brought Trooper Huff to our attention until -- and I also reviewed the unemployment insurance appeal hearing that you mentioned earlier. All of those things in there.

Q. Did you have an opportunity to see the opinion that came down from the Court of Appeals in the last couple of weeks in the unemployment matter?

FREDDIE WAYNE HUFF, II v. NC DEPT OF PUBLIC SAFETY, et al., 1:15-cv-599
Chaplin & Associates 336-992-1954

Freddie Wayne Huff, II v. NCDPS
File No. 1:15-CV-599
EXHIBIT 1 to Defendants MSJ

001

MAJOR JOSEPH A. COTTON Major Joseph A. Cotton

Page 12

documents that you reviewed?

A. If they're in order. Are they in order?

Q. Yes, they are. May be double sets. They are.

(Off-record comments)

Q. We'll come back to that.

Did you initiate the internal affairs complaint against Trooper Huff?

A. Yes, sir.

Q. And was that done on or about January 17, 2014, as a document, Exhibit Four in front of you?

A. Yes, sir. This appears to be the service memo I completed along with the personnel complaint on January 7th, 2014.

Q. January 17, 2014?

A. Yes, sir.

Q. Okay. I thought you said 7th ---

A. No, sir, 17th. Excuse me.

Q. Okay. And so the -- my understanding from Lieutenant Carter's deposition is that a decision was made to have an informal investigation of Trooper Huff before this complaint was made?

A. Yes, sir, and I don't know the -- have

FREDDIE WAYNE HUFF, II v. NC DEPT OF PUBLIC SAFETY, et al. 1:15-cv-599
Chaplin & Associates 336-992-1954

**Freddie Wayne Huff, II v. NCDPS**
**File No. 1:15-CV-599**
**EXHIBIT 1 to Defendants MSJ**

**002**

MAJOR JOSEPH A. COTTON Major Joseph A. Cotton

Page 14

internal affairs investigators Carter and Snotherly after the interview?

A. After the interview, they reported it to me. Of course, they completed the report of investigation, the HP721. As far as other things that they did as far as interviews, off the top of my head, I -- I don't know.

Q. Okay. Sitting here, you can't ---

A. No, sir.

Q. --- recall anything that they did?

A. Yes, sir.

Q. And if Lieutenant Carter just testified that once the investigation was completed and the report was written up, that was the end of her activity ---

A. Yes, sir.

Q. --- is there anything else that would've been done?

A. I'll have to ask you to repeat it. I'm sorry. I just don't quite understand.

Q. That's fine. I told you to tell me if you don't understand. And I've been talking all day. So, at some point, the questions are nefarious and you have to be less loose. Try it again in a little different way.

FREDDIE WAYNE HUFF, II v. NC DEPT OF PUBLIC SAFETY, et al. 1:15-cv-599
Chaplin & Associates 336-992-1954

Freddie Wayne Huff, II v. NCDPS
File No. 1:15-CV-599
EXHIBIT 1 to Defendants MSJ

003

MAJOR JOSEPH A. COTTON Major Joseph A. Cotton

Page 24

necessarily take them off the road. I don't think it's necessarily fair to the employee. I think that would be making a predetermination on the case. I think if we had -- could we have taken him off the road? Yes, sir, absolutely. We could have. Would that have been the most appropriate thing to do in Mr. Huff's case? I don't necessarily agree that it would be.

Q. Okay. Were you aware that there were 100 DWIs charged by Mr. Huff in this three-month time period?

A. Can you ask that question again?

Q. Were you aware that Trooper Huff, in those three months that he was on the road, charged 100 drivers with DWI and those -- all those charges were dismissed as a result of Trooper Huff's dismissal?

A. That's not the -- no, sir.

Q. What's the information that you have?

A. Looking at the initial federal complaint, and I think we -- I think it's been provided somewhere. Did a check of the CAD history where we enter in our activity for arrests, time spent, collisions investigated. From the time that Mr. Huff graduated from patrol

FREDDIE WAYNE HUFF, II v. NC DEPT OF PUBLIC SAFETY, et al. 1:15-cv-599
Chaplin & Associates 336-992-1954

Freddie Wayne Huff, II v. NCDPS
File No. 1:15-CV-599
EXHIBIT 1 to Defendants MSJ

004

MAJOR JOSEPH A. COTTON Major Joseph A. Cotton

Page 29

want to keep it.

Q. (Mr. James) So, all right. During this entire period of January 11, 2014, through April 21, 2014, your job duty was as the captain of internal affairs. Is that accurate?

A. Yes, sir.

Q. Okay. And on April 16, 2014, as referenced on your time line of events, a predisciplinary conference is held with Trooper Huff so that he can provide any further information regarding the recommendation he be dismissed ---

A. Yes, sir.

Q. --- from the North Carolina Highway Patrol. Did I read that correctly?

A. Yes, sir.

Q. And so my question for you is, when was Trooper Huff presented with the additional charges?

A. There was a notice of predisciplinary conference. It's a -- the director of professional standards, which was Major Harris at the time, makes a recommendation. The colonel makes a -- concurs with it and recommends that a predisciplinary conference be held. And on -- at

FREDDIE WAYNE HUFF, II v. NC DEPT OF PUBLIC SAFETY, et al. 1:15-cv-599
Chaplin & Associates 336-992-1954

Freddie Wayne Huff, II v. NCDPS
File No. 1:15-CV-599
EXHIBIT 1 to Defendants MSJ

005

MAJOR JOSEPH A. COTTON Major Joseph A. Cotton

Page 35

Colonel Grey that the findings should be other than as recommended, he was going to be dismissed.

A. That was the recommendation. But, like you -- the predisciplinary conference was scheduled for him to provide any other mitigating or any -- any other information he wanted the colonel to know before he made his final decision.

Q. Okay. And you know I deposed Colonel Grey this morning?

A. Yes, sir.

Q. Did you speak with him after his deposition?

A. I just asked him how long his deposition was. He said three hours. That was it.

Q. It didn't seem like three hours.

So my understanding of Trooper Grey's testimony is that unless Trooper Huff -- then Trooper Huff could have persuaded Trooper Grey that the facts were other than as found in the investigative report, there was nothing that would've persuaded Colonel Grey to not dismiss him.

A. That -- that's -- I don't want to, I guess, restate. That is Trooper -- or Mr. Huff's -- that was his opportunity to provide any new

FREDDIE WAYNE HUFF, II v. NC DEPT OF PUBLIC SAFETY, et al. 1:15-cv-599
Chaplin & Associates 336-992-1954

Freddie Wayne Huff, II v. NCDPS
File No. 1:15-CV-599
EXHIBIT 1 to Defendants MSJ

006

MAJOR JOSEPH A. COTTON Major Joseph A. Cotton

Page 36

information or any information he wanted the colonel to know. So that is absolutely his opportunity to provide -- provide information for Colonel Grey to consider.

Q. Okay. What information could Trooper Huff have conceivably provided that would have resulted in a different outcome than his dismissal?

A. I don't know.

Q. Were you asked your opinion by either then Major Harris or the colonel about what was the appropriate discipline to take in Trooper Huff's case?

A. No, sir, not that I recall.

Q. Sorry, I lost your time line. What was the number? Oh, 32. That's why I lost it.

Did you confirm that Scott Stanbury's pending criminal case was dismissed by the DA's office?

A. When I looked it up in the AOC files in preparation for Mr. Huff's employee advisory hearing, I did an inquiry into the AOC courts and that's where I have seen that this case was dismissed on June the 10th.

Q. Okay. Did you ever investigate by

FREDDIE WAYNE HUFF, II v. NC DEPT OF PUBLIC SAFETY, et al. 1:15-cv-599
Chaplin & Associates 336-992-1954

**Freddie Wayne Huff, II v. NCDPS**
**File No. 1:15-CV-599**
**EXHIBIT 1 to Defendants MSJ**

**007**

MAJOR JOSEPH A. COTTON Major Joseph A. Cotton

Page 45

that's going to result in dismissal or it would depend on the speed and the circumstances?

A. This would depend on the case, yes, sir.

Q. Okay. What lesser violations could Trooper Huff have been subjected to other than dismissal?

A. It could range -- it could start out -- start at the lowest level and work -- to start, he could've been exonerated, could have been issued a written warning, could've been suspended from one to ten days or couldn't have been dismissed.

Q. Okay. That's the range?

A. Yes, sir. Does that answer your question?

Q. Yes, sir, it sure does. I meant to ask that earlier of someone else and forgot, so I appreciate you telling me that.

Who made the decision that Trooper Huff was untruthful?

A. Just based on the memorandums, it would be Major Harris made the recommendation just as a -- I guess as a process, too. Major Harris makes the recommendation to Colonel Grey. And then Colonel Grey makes a -- after the predisciplinary conference, makes a final decision on what

FREDDIE WAYNE HUFF, II v. NC DEPT OF PUBLIC SAFETY, et al. 1:15-cv-599
Chaplin & Associates 336-992-1954

Freddie Wayne Huff, II v. NCDPS
File No. 1:15-CV-599
EXHIBIT 1 to Defendants MSJ
008

MAJOR JOSEPH A. COTTON Major Joseph A. Cotton

Page 46

policies were violated.

Q. During your tenure at the State Highway Patrol, have there been other state troopers had a charge of the truthfulness provision substantiated?

A. Yes, sir.

Q. And were they dismissed as a result?

A. Yes, sir.

Q. Is that a zero tolerance for the patrol?

A. Yes, sir. Just speaking in general terms, yes, sir.

Q. Are you aware of any state trooper not terminated when a violation of truthfulness provision is substantiated?

A. I'm not aware of any that has been actually disciplined for truth -- any trooper or employee that's been disciplined for truthfulness that has not been terminated.

Q. Okay. There was a charge of violation of rules.

A. Yes, sir.

Q. Who made the decision Trooper Huff violated a rule?

A. Again, that would be Major Harris's recommendation and the colonel's decision.

FREDDIE WAYNE HUFF, II v. NC DEPT OF PUBLIC SAFETY, et al. 1:15-cv-599
Chaplin & Associates 336-992-1954

**Freddie Wayne Huff, II v. NCDPS**
**File No. 1:15-CV-599**
**EXHIBIT 1 to Defendants MSJ**

**009**

MAJOR JOSEPH A. COTTON Major Joseph A. Cotton

Page 60

location of the items for sale as Canton, Ohio, and Ohio respectively."

Q. All right. Did you know his in-laws are from Canton, Ohio?

A. If I did, I don't remember. Are you asking me did I know that?

Q. Yes.

A. If I did, I don't remember.

Q. It's in the report of investigation?

A. Yes, sir.

Q. Okay. His in-laws are from Canton, Ohio. It -- nowhere does it say Trooper Huff attempted to conceal this online transaction, correct?

A. Yes, sir.

Q. That trail audit is not accurate, correct?

A. I think it's accurate in that what it's trying -- what he was dismissed for. Does it use the same words as to 343? No, sir.

Q. Well, "attempt to conceal" has a criminal connotation, correct?

A. Well, he used the -- I'll just go back to the charge sheet. He -- in the charge sheet, and it is quoted, "admitted that he used the Ohio

FREDDIE WAYNE HUFF, II v. NC DEPT OF PUBLIC SAFETY, et al. 1:15-cv-599
Chaplin & Associates 336-992-1954

Freddie Wayne Huff, II v. NCDPS
File No. 1:15-CV-599
EXHIBIT 1 to Defendants MSJ

010

MAJOR JOSEPH A. COTTON Major Joseph A. Cotton

Page 61

location because he 'didn't really want this to come to light.'"

Q. Do you have a personal email account?

A. No, sir.

Q. Never have?

A. I may have in years past. I ain't -- I ain't used it in ten or 12 years. I can't specifically recall ever having one.

Q. All right. Are you familiar with people that have private email accounts ---

A. Yes, sir.

Q. --- having usernames?

A. Yes, sir.

Q. They make them up because, if you didn't get on the internet real early and reserve a username with someone like AOL or gmail, you've got to start adding numbers and ---

A. Yes, sir.

Q. --- nicknames and things like that. Do you think those people that do that are trying to conceal their identity?

A. I don't know.

Q. Okay. You're not going to tell me that you think that's incorrect, attempted to conceal this online transaction?

FREDDIE WAYNE HUFF, II v. NC DEPT OF PUBLIC SAFETY, et al. 1:15-cv-599
Chaplin & Associates 336-992-1954

Freddie Wayne Huff, II v. NCDPS
File No. 1:15-CV-599
EXHIBIT 1 to Defendants MSJ

011

MAJOR JOSEPH A. COTTON Major Joseph A. Cotton

Page 62

A. In my opinion, no, sir.

Q. The next to that last sentence reads, "Trooper Huff was untruthful with investigators when questioned about the selling of his issued equipment." Is the issued equipment shoes?

A. Yes, sir.

Q. All right. That's what we're talking about, shoes?

A. Yes, sir.

Q. And the untruthfulness is the page 21 and page 35 where Trooper Huff was asked generally did you sell anything else, "No, no, no," and then thereafter, a page later, he says, "Oh, I sold the shoes," correct?

A. I believe he was asked if he'd ever sold any shoes or belts or anything online and he said no.

Q. He said no and then ---

A. And earlier in the interview, he said he had never. I'm paraphrasing.

Q. It's those two occasions, right?

A. Yes, sir.

Q. Okay. So the sentence that reads, "Trooper Huff sold a pair of issued class A Oxford uniform shoes on an online auction site."

FREDDIE WAYNE HUFF, II v. NC DEPT OF PUBLIC SAFETY, et al. 1:15-cv-599
Chaplin & Associates 336-992-1954

Freddie Wayne Huff, II v. NCDPS
File No. 1:15-CV-599
EXHIBIT 1 to Defendants MSJ

012

MAJOR JOSEPH A. COTTON Major Joseph A. Cotton

Page 63

Actually, that's what he did, correct?

A. Yes, sir.

Q. And the conclusion is that he shouldn't have done it because they were state issued and you all believe it's a violation of 14-91?

A. Yes, sir.

Q. And that he was untruthful when asked about it during his -- during the investigation, correct?

A. Yes, sir, that's what he was disciplined for.

Q. And that he sold it through the name Buckeye5351, correct?

A. Yes, sir.

Q. All three of these are the same item, just characterized differently?

A. This is all the same online transaction.

Q. Okay.

A. Yes, sir.

MR. JAMES: All right. That's all I have. Thank you, sir.

MS. HILL: I have just a few.

EXAMINATION

BY MS. HILL:

Q. What does the term "I really didn't want

FREDDIE WAYNE HUFF, II v. NC DEPT OF PUBLIC SAFETY, et al. 1:15-cv-599
Chaplin & Associates 336-992-1954

Freddie Wayne Huff, II v. NCDPS
File No. 1:15-CV-599
EXHIBIT 1 to Defendants MSJ

013

MAJOR JOSEPH A. COTTON Major Joseph A. Cotton

Page 67

A. Yes, ma'am.

Q. So would it appear to you that at least at the beginning of this predisciplinary conference, at least according to this transcript, that Mr. Huff had at least received that 721 and those memorandums that we just talked about?

A. Yes, ma'am.

Q. Okay. Now, you made the complaints -- the initial complaints about these personal conduct violations. Is that correct?

MR. JAMES: Object to form.

THE WITNESS: Yes.

Q. (Ms. Hill) Had you heard of Scott Stanbury before you made those complaints?

A. No, ma'am.

Q. When you made these complaints about these personal conduct violations, on what were you basing them?

A. Basing it on the information we had received about the -- the campaign hat in the patrol car and the subsequent information that we received from the preliminary investigation.

Q. When's the first time you heard Scott Stanbury's name?

A. During the unemployment insurance appeal

FREDDIE WAYNE HUFF, II v. NC DEPT OF PUBLIC SAFETY, et al. 1:15-cv-599
Chaplin & Associates 336-992-1954

Freddie Wayne Huff, II v. NCDPS
File No. 1:15-CV-599
EXHIBIT 1 to Defendants MSJ

014

MAJOR JOSEPH A. COTTON Major Joseph A. Cotton

Page 68

hearing, I believe, part two. I don't know the date.

Q. So at that point, Mr. -- unemployment security commission -- unemployment insurance hearing, by that point, Mr. Huff had already been terminated, correct?

A. Yes, ma'am.

Q. So first time you'd heard Mr. Stanbury's name, is it your testimony, sir, that -- at least from your part in this, did Mr. Stanbury have anything to do with the complaints that you lodged against Mr. Huff?

A. No, ma'am.

Q. Did the governor have anything to do with the complaints you lodged against Mr. Huff?

A. No, ma'am.

MS. HILL: Those are my questions. Thank you.

MR. JAMES: I just have one more.

EXAMINATION

BY MR. JAMES:

Q. She keeps using the word "complaints." You lodged one complaint ---

A. Yes, sir.

Q. --- against Mr. Huff, Trooper Huff then,

FREDDIE WAYNE HUFF, II v. NC DEPT OF PUBLIC SAFETY, et al. 1:15-cv-599
Chaplin & Associates 336-992-1954

Freddie Wayne Huff, II v. NCDPS
File No. 1:15-CV-599
EXHIBIT 1 to Defendants MSJ

015