COL. WILLIAM GREY Colonel William Grey, SHP

Page 86

```
 1    Trooper Huff that had sold this campaign hat ---
 2         A.    Uh-huh (yes).
 3         Q.    And you did learn that at some point?
 4         A.    Yes, sir.
 5         Q.    Okay.  Did you have any input with
 6    Captain Cotton on what to initially charge
 7    Trooper Huff with?
 8         A.    No, sir.
 9         Q.    Okay.  Let's look at -- I don't know if
10    we marked it the other day.  I think we did.
11              MS. DAVIS:  44E.
12              MR. JAMES:  What?
13              MS. DAVIS:  44E.
14              MR. JAMES:  Well, she's getting
15    pretty good at reading my mind.  She did.
16    Incredible.
17         Q.    (Mr. James)  I'm going to hand you what
18    we marked as 44E and then we have a different
19    version of it -- that's what I was looking for,
20    the one we marked already, 15.  Okay.
21              MS. DAVIS:  Nine.  You haven't done
22    Nine.
23              MR. JAMES:  Let's do Nine.  Let's
24    do Nine and Ten.
25         Q.    (Mr. James)  Hand you what's marked for
```

FREDDIE WAYNE HUFF, II v. NC DEPT OF PUBLIC SAFETY, et al. 1:15-cv-599
Chaplin & Associates    336-992-1954

Freddie Wayne Huff, II v. NCDPS
File No. 1:15-CV-599
EXHIBIT 3 to Defendants MSJ

001

Case 1:15-cv-00599-CCE-JEP   Document 27-3   Filed 08/01/16   Page 1 of 8

```
 1    investigation, yes, sir.
 2         Q.   Okay.
 3         A.   He had some other things that factored
 4    into it.  But in this case, his untruthfulness
 5    along with the conformance to laws led to his
 6    dismissal.
 7         Q.   The conformance to laws is a standard
 8    reference to the North Carolina Embezzlement
 9    Statute, 14-391, I think.  And are you all saying
10    or did you believe that Trooper Huff's selling of
11    those state issued, low top shoes amount to
12    embezzlement?
13         A.   Yes, sir.
14         Q.   Okay.
15         A.   I think any time you take something from
16    your employer and resell it for your own personal
17    use, then you're embezzling.
18         Q.   All right.  So where in this process --
19    we've got the initial investigation and a report
20    that's not dated.  We know that the investigation
21    occurred in January 2014.  January 16, 2014, was
22    the date of the transcript, I think.  You can flip
23    back and look.
24         A.   Yeah.
25         Q.   Okay.  So Trooper Huff is notified of
```

FREDDIE WAYNE HUFF, II v. NC DEPT OF PUBLIC SAFETY, et al. 1:15-cv-599
Chaplin & Associates    336-992-1954

Freddie Wayne Huff, II v. NCDPS
File No. 1:15-CV-599
EXHIBIT 3 to Defendants MSJ
Case 1:15-cv-00599-CCE-JEP   Document 27-3   Filed 08/01/16   Page 2 of 8

002

```
 1   was?
 2        A.   No, sir.
 3        Q.   Okay.  You've done nothing to look into
 4   it, correct?
 5        A.   That's correct.
 6        Q.   All right.  So let me correct you on one
 7   fact.  The Employment Security Commission, your
 8   witnesses were Lieutenant -- then
 9   Lieutenant Carter, First Sergeant Snotherly and it
10   was a telephone hearing conducted over two
11   different days.  Have you reviewed that
12   transcript?
13        A.   No, sir.
14        Q.   Were you aware that Stanbury's name came
15   up in that hearing?
16        A.   No, sir.  I think the first time I heard
17   it was in the interrogatories.  And I think that
18   when we were talking about the interrogatories,
19   when we were looking at those with legal counsel,
20   it came up that that's the first time it was
21   mentioned.
22        Q.   Please -- I usually tell this but since
23   -- because of your position, I assumed you would
24   know.  I'll never ask you what you talked about
25   with legal counsel.  So I'm going to voluntarily
```

FREDDIE WAYNE HUFF, II v. NC DEPT OF PUBLIC SAFETY, et al.  1:15-cv-599
Chaplin & Associates     336-992-1954

Freddie Wayne Huff, II v. NCDPS
File No. 1:15-CV-599
EXHIBIT 3 to Defendants MSJ

003

Case 1:15-cv-00599-CCE-JEP   Document 27-3   Filed 08/01/16   Page 3 of 8

1    A.   I -- I would be surprised if she said
2  that.
3    Q.   Okay.  And you'd be surprised because
4  you had talked with Major Harris about the
5  decision to dismiss Trooper Huff?
6    A.   No.  Because it's not Major Harris's
7  decision.
8    Q.   Okay.  So ---
9    A.   (Inaudible).  Okay.
10   Q.   No, I'm sorry.  I didn't mean to cut you
11 off.
12   A.   No, go ahead.  I'm fine.
13   Q.   So, in the predisciplinary hearing, what
14 could Trooper Huff have done, if anything, to have
15 persuaded you that he should not be dismissed?
16   A.   Prove that he hadn't lied, that he
17 hadn't sold the shoes, that he told the truth.
18   Q.   Okay.  But you got the transcript.  So
19 what are you saying, there was an error in the
20 transcript?
21   A.   No, sir.
22   Q.   Okay.
23   A.   You asked me what he could do to not be
24 fired.  And that was to come in and show that we
25 were wrong somewhere, that he was wrong, that he

FREDDIE WAYNE HUFF, II v. NC DEPT OF PUBLIC SAFETY, et al. 1:15-cv-599
Chaplin & Associates    336-992-1954

Freddie Wayne Huff, II v. NCDPS
File No. 1:15-CV-599
EXHIBIT 3 to Defendants MSJ
Case 1:15-cv-00599-CCE-JEP  Document 27-3  Filed 08/01/16  Page 4 of 8

004

1  didn't lie.  But the fact is he did lie.
2      Q.   Okay.  So, if the transcript's
3  accurate ---
4      A.   Uh-huh (yes).
5      Q.   --- and you didn't listen to the
6  exchange -- the verbal exchange on audio as
7  opposed to just reading the transcript.  In your
8  opinion, there's nothing he could have done given
9  your conclusion that he lied?
10     A.   Based on -- unless the facts changed,
11 no, there was nothing he could do.  If the facts
12 changed, then yes.  That's the reason we had the
13 conference.
14     Q.   Were you aware that Trooper Huff was not
15 notified of the additional charges until that
16 conference?
17     A.   No, sir.
18     Q.   He should've been, shouldn't he?
19     A.   I don't know how to answer that question
20 if in fact it should've been or not.  When was the
21 conference?
22     Q.   April 16th, 2014.
23     A.   Okay.  Right here on April 11th, he was
24 notified.
25     Q.   All right.  Show me where he says

FREDDIE WAYNE HUFF, II v. NC DEPT OF PUBLIC SAFETY, et al. 1:15-cv-599
Chaplin & Associates    336-992-1954

Freddie Wayne Huff, II v. NCDPS
File No. 1:15-CV-599
EXHIBIT 3 to Defendants MSJ

005

Case 1:15-cv-00599-CCE-JEP   Document 27-3   Filed 08/01/16   Page 5 of 8

```
 1   for the upcoming conference."  Do you see that?
 2   That's in that second paragraph.
 3        A.   Yes, ma'am.
 4        Q.   The report of investigation, I believe
 5   that that was Exhibit Number Ten that
 6   Mr. James ---
 7        A.   Yes -- yes, ma'am.
 8        Q.   --- showed you.  Exhibit Number Ten has
 9   all of the allegations including untruthfulness
10   and the conformance to laws, does it not?
11        A.   Yes, ma'am.
12        Q.   All right.  So Mr. Huff was fully aware
13   that he was being dismissed for not only the
14   violation of rules regarding the unserviceable
15   items and exchanges, the conformance to laws
16   violation but also the untruthfulness violation.
17   Is that correct?
18        A.   Yes, ma'am.
19        Q.   And that predisciplinary conference
20   letter, what's the date on that?
21        A.   11 April.
22        Q.   And when was his PDC conference?  It
23   says it in the letter.
24        A.   16 April.
25        Q.   So he had five days.
```

FREDDIE WAYNE HUFF, II v. NC DEPT OF PUBLIC SAFETY, et al. 1:15-cv-599
Chaplin & Associates    336-992-1954

Freddie Wayne Huff, II v. NCDPS
File No. 1:15-CV-599
EXHIBIT 3 to Defendants MSJ

Case 1:15-cv-00599-CCE-JEP   Document 27-3   Filed 08/01/16   Page 6 of 8

006

```
 1      A.   Yes, ma'am.
 2      Q.   Are those technical violations the types
 3 of violations that would lead to discipline
 4 normally, however?
 5      A.   No, ma'am.
 6      Q.   However, the violations that are alleged
 7 in this report of investigation, are those the
 8 types of violations that would normally lead to
 9 discipline?
10      A.   Yes, ma'am.
11      Q.   Okay.  Mr. James asked you a lot of
12 questions earlier in our deposition about the
13 trademark questions and I think he said something
14 about a Chevy Tahoe and selling it.  I don't know
15 the answer either to be honest with you.  I don't
16 practice that type of law.  But you do have -- not
17 just me, but you have in-house legal counsel that
18 you talk to about legal questions.  Is that right?
19      A.   Yes, ma'am.
20      Q.   So you don't make decisions on your own
21 about legal stuff, right?
22      A.   No, ma'am.
23      Q.   Okay.  And I just want to be clear.  At
24 any time, was your decision to dismiss Mr. Huff
25 influenced at all by anyone outside of the Highway
```

FREDDIE WAYNE HUFF, II v. NC DEPT OF PUBLIC SAFETY, et al. 1:15-cv-599
Chaplin & Associates    336-992-1954

Freddie Wayne Huff, II v. NCDPS
File No. 1:15-CV-599
EXHIBIT 3 to Defendants MSJ

007

Case 1:15-cv-00599-CCE-JEP   Document 27-3   Filed 08/01/16   Page 7 of 8

```
 1   Patrol?
 2       A.   No, ma'am.
 3       Q.   Was your decision to dismiss Mr. Huff
 4   influenced by Governor McCrory who appointed you
 5   to your position?
 6       A.   No, ma'am.
 7       Q.   You can retire at any time?
 8       A.   Yes, ma'am.
 9       Q.   If Governor McCrory tells you right now
10   thank you, Colonel Grey, for your service, you can
11   go to the house with your full pension?
12       A.   Yes, ma'am
13            MS. HILL:  Thank you, sir.  Those
14   are my questions.
15            MR. JAMES:  I don't have any more.
16            VIDEOGRAPHER:  We're off the record
17   at 1:02 p.m.
18            WHEREUPON, at 01:02 o'clock p.m., the
19   deposition was adjourned.
20
21
22
23
24
25
```

FREDDIE WAYNE HUFF, II v. NC DEPT OF PUBLIC SAFETY, et al. 1:15-cv-599
Chaplin & Associates     336-992-1954

Freddie Wayne Huff, II v. NCDPS
File No. 1:15-CV-599
EXHIBIT 3 to Defendants MSJ

Case 1:15-cv-00599-CCE-JEP  Document 27-3  Filed 08/01/16  Page 8 of 8

008