STATE OF NORTH CAROLINA

COUNTY OF DAVIDSON

FILED IN THE OFFICE OF
ADMINISTRATIVE HEARINGS
2015 JUN 12 AM 10: 15 OSP 03402

OFFICE OF
ADMIN HEARINGS

| | |
|---|---|
| FREDDIE WAYNE HUFF, II, | ) |
| Petitioner, | ) |
| | ) **RESPONDENT'S** |
| v. | ) **MOTION FOR** |
| | ) **SUMMARY JUDGMENT** |
| NC DEPARTMENT OF PUBLIC SAFETY; | ) |
| Respondent. | ) |

**NOW COMES** Respondent, N. C. DEPARTMENT OF PUBLIC SAFETY, by and through its attorneys, Roy Cooper, Attorney General, and Tammera S. Hill, Assistant Attorney General, and hereby moves for summary judgment pursuant to N.C.G.S. § 1A-1, Rule 56 because there is no genuine issue of material fact, and Respondent is entitled to judgment as a matter of law. In support of said motion, Respondent respectfully submits the following:

## PROCEDURAL HISTORY

1. On March 17, 2013 Petitioner began his employment with the State of North Carolina as a Highway Patrol Trooper. Immediately prior to this employment with the Highway Patrol, Petitioner was employed as a municipal police officer with the city of Lexington in Davidson County, North Carolina.

2. Petitioner had no prior employment with the State of North Carolina.

3. Petitioner was dismissed from the North Carolina State Highway Patrol on 21 April 2014 for violations of Highway Patrol policies: to wit, Conformance to Laws; Violation of Rules; and Truthfulness.

4. Because Petitioner was not a career state employee, he was initially refused access to Respondent's internal grievance process.

5. Petitioner filed a contested case petition on May 12, 2014 alleging that he was terminated without just cause and that he qualified as a career state employee pursuant to N.C.G.S.126-5(a)(2)(d).

1

Freddie Wayne Huff, II v. NCDPS, et al.
File No. 1:15-CV-599
EXHIBIT 7 to Defendants MSJ

001

Case 1:15-cv-00599-CCE-JEP   Document 27-7   Filed 08/01/16   Page 1 of 20

6. Respondent filed a Motion to Dismiss and supporting Memorandum of Law based on lack of subject matter jurisdiction because Petitioner was not subject to the just cause protections of Chapter 126 since he was not a career state employee.

7. Petitioner filed a Memorandum of Law and response to Respondent's Memorandum of Law In Support of Motion to Dismiss, alleging Petitioner was a career state employee by virtue of his prior employment with the City of Lexington, North Carolina Police Department.

8. This Court denied Respondent's Motion to Dismiss on July 22, 2014.

9. On September, 30, 2014 Petitioner filed Motion to Stay the proceedings pending Petitioner's completion of the internal agency grievance process

10. On October 17, 2014, the Hon. J. Randall May issued an "Order to Stay Proceedings Pending Final Ruling of Office of State Human Resources". In his order, Judge May ordered Respondent to complete the internal grievance process, including review by the Office of State Human Resources within forty-five (45) days

11. The Respondent allowed Petitioner to complete the internal grievance process. An Employee Advisory Committee hearing was conducted on Monday, November 17, 2014.

12. Upon review of the Committee's findings of fact and recommendations, Gregory K. Baker, Commissioner of Law Enforcement, upheld Petitioner's dismissal for unacceptable personal conduct.

13. The Office of State Human Resources reviewed and approved the decision to uphold Petitioner's dismissal.

14. On December 1, 2014, a letter was submitted to the Petitioner advising him of the final decision via certified mail, return receipt requested.

## ARGUMENT

### PETITIONER IS NOT A CAREER STATE EMPLOYEE AND DOES NOT QUALIFY AS AN EMERGENCY MANAGEMENT EMPLOYEE PURSUANT TO N.C.G.S. §§ 126-5(a)(2) and 166A-19.3(9).

Petitioner acknowledges that he was not employed by the State of North Carolina for the required time to qualify as a career state employee pursuant to N.C.G.S. §126-1.1(a)(2); however, Petitioner argues that his time as a Lexington, NC municipal police officer should be included in the computation of time pursuant to N.C.G.S. § 126-5(a)(2).

2

Freddie Wayne Huff, II v. NCDPS, et al.
File No. 1:15-CV-599
EXHIBIT 7 to Defendants MSJ

002

Case 1:15-cv-00599-CCE-JEP   Document 27-7   Filed 08/01/16   Page 2 of 20

Petitioner contends that the Lexington, NC police department qualifies as an emergency management agency. Petitioner's claim is without merit.

N.C.G.S. § 166A-19.3(9) defines "Emergency management agency" as "A State or local governmental agency charged with coordination of **all** emergency management activities for its jurisdiction." (emphasis added) [**EXHIBIT A**]. Furthermore, the governing body of each *county*, is responsible for emergency management within the geographical limits of such county. **All** emergency management efforts within a county are coordinated by the *county*. N.C.G.S. § 166A-19.15(a), 14B NCAC 03.0301. (emphasis added) [**EXHIBITS A-1, D**] Lexington, NC is a *municipality* located in Davidson County, North Carolina. Pursuant to Chapter 166A, Davidson County has established an Emergency Management Agency whose director is responsible for the coordination of "**all** organizations for emergency management within the county" and cooperating with and maintaining "liaison with emergency management agencies and organizations of the state and federal governments." *Lexington, NC Code of Ordinances, Article II, Section 9-20* (emphasis added) [**EXHIBIT B**]. Additionally, N.C.G.S. § 166A is specifically referenced in the establishment language of this article. [*See*, **EXHIBIT B**, footnote to Section 9-17] Davidson County Emergency Services is the only entity in Davidson County, North Carolina that qualifies as a local emergency management agency. *See also*, Affidavit of Michael Sprayberry, [**EXHIBIT E**]

Chapter 17 of the Lexington Code of Ordinances establishes the police department. [**EXHIBIT C**] The Lexington, NC Police Department is headed by a chief of police whose duties are "the direction and control of all law enforcement and crime prevention activities and personnel." *Lexington, NC Code of Ordinances, Part II, Sec.*

3

Freddie Wayne Huff, II v. NCDPS, et al.
File No. 1:15-CV-599
EXHIBIT 7 to Defendants MSJ

003

Case 1:15-cv-00599-CCE-JEP   Document 27-7   Filed 08/01/16   Page 3 of 20

*17-3.* Unlike the establishment language of the Emergency Management Agency in Chapter 9, the terms "emergency management" or "emergency management agency" are not used or even cross referenced in Chapter 17 of the Lexington, NC Code of Ordinances. It is unreasonable, therefore, to designate the Lexington Police Department as an "emergency management agency" as defined by N.C.G.S. 166A-19.3(9) when the written provisions establishing the police department make no such reference. Moreover, in the instant case, it would be illogical to designate the local police department as an emergency management agency when the actual, statutory emergency management agency is established within the same code of ordinances that establishes the police department. It is well-settled that "[i]n construing any statute or ordinance the court will avoid an interpretation which would lead to absurd results." *Variety Theatres, Inc. v. Cleveland County*, 282 N.C. 272, 275, 192 S.E.2d 290, 292 (1972). Furthermore, during an emergency, a Lexington city employee may be designated as the local emergency management representative. That employee is the City of Lexington *Fire Chief.* See Affidavit of Alton Haynes **[EXHIBIT F]**. No police officer receives such designation.

Because the Lexington Police Department does not qualify as an emergency management agency by any reading of the aforementioned statutes and ordinances, Petitioner cannot include his time as a municipal police officer with the city of Lexington, NC in order to attain career status pursuant to N.C.G.S. §§126-1.1(a)(2) and 126-5(a)(2). Therefore, there exists no genuine issue of material fact, and Respondent is entitled to judgment as a matter of law.

4

Freddie Wayne Huff, II v. NCDPS, et al.
File No. 1:15-CV-599
EXHIBIT 7 to Defendants MSJ

004

Case 1:15-cv-00599-CCE-JEP   Document 27-7   Filed 08/01/16   Page 4 of 20

Respectfully submitted, this the ___12th___ day of January, 2015.

ROY COOPER
ATTORNEY GENERAL

*Tammera S. Hill*
Tammera S. Hill
Assistant Attorney General
N. C. Department of Justice
Public Safety Section
9001 Mail Service Center
Raleigh, North Carolina 27699-9001
Telephone: (919) 716-6500
Facsimile: (919) 716-6760
thill@ncdoj.gov
State Bar No. 23172

**********************************

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that I have this date served a copy of the foregoing *Respondent's Status Report* upon the Petitioner herein by depositing a copy of the same in the exclusive care and custody of the United States Postal Service, first class postage prepaid, addressed to his attorney of record as follows:

Barry K. Henline
LAW OFFICES OF BARRY K. HENLINE
1140 N. Lake Park Boulevard, Suite H
Carolina Beach, NC 28428

This the ___12th___ day of January, 2015.

*Tammera S. Hill*
Tammera S. Hill
Assistant Attorney General

Freddie Wayne Huff, II v. NCDPS, et al.
File No. 1:15-CV-599
EXHIBIT 7 to Defendants MSJ
Case 1:15-cv-00599-CCE-JEP   Document 27-7   Filed 08/01/16   Page 5 of 20

005



Article 1A.

North Carolina Emergency Management Act.

Part 1. General Provisions.

## § 166A-19. Short title.

This Article may be cited as "North Carolina Emergency Management Act." (1977, c. 848, s. 2; 1979, 2nd Sess., c. 1310, s. 2; 1995, c. 509, s. 120; 2012-12, s. 1(b).)

## § 166A-19.1. Purposes.

The purposes of this Article are to set forth the authority and responsibility of the Governor, State agencies, and local governments in prevention of, preparation for, response to, and recovery from natural or man-made emergencies or hostile military or paramilitary action and to do the following:
- (1) Reduce vulnerability of people and property of this State to damage, injury, and loss of life and property.
- (2) Prepare for prompt and efficient rescue, care, and treatment of threatened or affected persons.
- (3) Provide for the rapid and orderly rehabilitation of persons and restoration of property.
- (4) Provide for cooperation and coordination of activities relating to emergency mitigation, preparedness, response, and recovery among agencies and officials of this State and with similar agencies and officials of other states, with local and federal governments, with interstate organizations, and with other private and quasi-official organizations. (1959, c. 337, s. 1; 1975, c. 734, s. 1; 1977, c. 848, s. 2; 1995, c. 509, s. 121; 2012-12, s. 1(b).)

## § 166A-19.2. Limitations.

Nothing in this Article shall be construed to do any of the following:
- (1) Interfere with dissemination of news or comment on public affairs; but any communications facility or organization, including, but not limited to, radio and television stations, wire services, and newspapers may be requested to transmit or print public service messages furnishing information or instructions in connection with an emergency, disaster, or war.
- (2) Limit, modify, or abridge the authority of the Governor to declare martial law or exercise any other powers vested in the Governor under the North Carolina Constitution, statutes, or common law of this State independent of, or in conjunction with, any provisions of this Article. (1975, c. 734, s. 2; 1977, c. 848, s. 2; 1995, c. 509, s. 122; 2012-12, s. 1(b).)

## § 166A-19.3. Definitions.

The following definitions apply in this Article:
- (1) Account. - The State Emergency Response Account established in G.S. 166A-19.42.
- (2) Chair of the board of county commissioners. - The chair of the board of county commissioners or, in case of the chair's absence or disability, the person authorized to act in the chair's stead. Unless the governing body of the county has specified who is to act in lieu of the chair with respect to a particular power or duty set out in this Article, this term shall mean the person generally authorized to act in lieu of the chair.
- (3) Disaster declaration. - A gubernatorial declaration that the impact or anticipated impact of an emergency constitutes a disaster of one of the types enumerated in G.S. 166A-19.21(b).
- (4) Division. - The Division of Emergency Management established in Subpart A of Part 5 of Article 13 of Chapter 143B of the General Statutes.
- (5) Eligible entity. - Any political subdivision. The term also includes an owner or

Freddie Wayne Huff, II v. NCDPS, et al.
File No. 1:15-CV-599
EXHIBIT 7 to Defendants MSJ

006

operator of a private nonprofit utility that meets the eligibility criteria set out in this Article.

(6) Emergency. - An occurrence or imminent threat of widespread or severe damage, injury, or loss of life or property resulting from any natural or man-made accidental, military, paramilitary, weather-related, or riot-related cause.

(7) Emergency area. - The geographical area covered by a state of emergency.

(8) Emergency management. - Those measures taken by the populace and governments at federal, State, and local levels to minimize the adverse effect of any type emergency, which includes the never-ending preparedness cycle of planning, prevention, mitigation, warning, movement, shelter, emergency assistance, and recovery.

(9) Emergency management agency. - A State or local governmental agency charged with coordination of all emergency management activities for its jurisdiction.

(10) Hazard risk management. - The systematic application of policies, practices, and resources to the identification, assessment, and control of risk associated with hazards affecting human health and safety and property. Hazard, risk, and cost-benefit analysis are used to support development of risk reduction options, program objectives, and prioritization of issues and resources.

(11) Mayor. - The mayor or other chief executive official of a municipality or, in case of that person's absence or disability, the person authorized to act in that person's stead. Unless the governing body of the municipality has specified who is to act in lieu of the mayor with respect to a particular power or duty set out in this Article, the term shall mean the person generally authorized to act in lieu of the mayor.

(12) Political subdivision. - Counties and incorporated cities, towns, and villages.

(13) Preliminary damage assessment. - The initial estimate prepared by State, local, or federal emergency management workers used to determine the severity and magnitude of damage caused by an emergency.

(14) Private nonprofit utility. - A utility that would be eligible for federal public assistance disaster funds pursuant to 44 C.F.R. Part 206.

(15) Secretary. - The Secretary of the Department of Public Safety.

(16) Stafford Act. - The Robert T. Stafford Disaster Relief and Emergency Assistance Act, Pub. L. No. 93-288, 88 Stat. 143, codified generally at 42 U.S.C. § 5121, et seq., as amended.

(17) State Acquisition and Relocation Fund. - State funding for supplemental grants to homeowners participating in a federal Hazard Mitigation Grant Program Acquisition and Relocation Program. These grants are used to acquire safe, decent, and sanitary housing by paying the difference between the cost of the home acquired under the federal Hazard Mitigation Grant Program Acquisition and Relocation Program and the cost of a comparable home located outside the 100-year floodplain.

(18) State Emergency Response Team. - The representative group of State agency personnel designated to carry out the emergency management support functions identified in the North Carolina Emergency Operations Plan. The State Emergency Response Team leader shall be the Director of the Division, who shall have authority to manage the Team pursuant to G.S. 166A-19.12(1), as delegated by the Governor. The Team shall consist of the following State agencies:
   a. Department of Public Safety.
   b. Department of Transportation.
   c. Department of Health and Human Services.
   d. Department of Environment and Natural Resources.
   e. Department of Agriculture and Consumer Services.
   f. Any other agency identified in the North Carolina Emergency Operations Plan.

Freddie Wayne Huff, II v. NCDPS, et al.
File No. 1:15-CV-599
EXHIBIT 7 to Defendants MSJ

007

Case 1:15-cv-00599-CCE-JEP   Document 27-7   Filed 08/01/16   Page 7 of 20

(19) State of emergency. – A finding and declaration by any of the following authorities that an emergency exists:
  a. The Governor, acting under the authority of G.S. 166A-19.20.
  b. The General Assembly, acting under the authority of G.S. 166A-19.20.
  c. The governing body of a municipality or the mayor of a municipality, acting under the authority of G.S. 166A-19.22.
  d. The governing body of a county or the chair of the board of commissioners of a county, acting under the authority of G.S. 166A-19.22. (1951, c. 1016, s. 2; 1953, c. 1099, s. 1; 1955, c. 387, s. 1; 1975, c. 734, ss. 4-6, 14; 1977, c. 848, s. 2; 1979, 2nd Sess., c. 1310, s. 2; 1995, c. 509, s. 123; 2001-214, s. 1; 2006-66, ss. 6.5(c), (d); 2009-193, ss. 1, 2; 2009-397, s. 2; 2012-12, s. 1(b); 2012-90, s. 10.)

§ 166A-19.4: Reserved for future codification purposes.

§ 166A-19.5: Reserved for future codification purposes.

§ 166A-19.6: Reserved for future codification purposes.

§ 166A-19.7: Reserved for future codification purposes.

§ 166A-19.8: Reserved for future codification purposes.

§ 166A-19.9: Reserved for future codification purposes.

Part 2. State Emergency Management.

§ 166A-19.10. Powers of the Governor.
(a) State Emergency Management Program. – The State Emergency Management Program includes all aspects of preparations for, response to, recovery from, and mitigation against war or peacetime emergencies.
(b) Powers of the Governor. – The Governor is authorized and empowered to do the following:
  (1) To exercise general direction and control of the State Emergency Management Program and to be responsible for carrying out the provisions of this Article, other than those provisions that confer powers and duties exclusively on local governments.
  (2) To make, amend, or rescind the necessary orders, rules, and regulations within the limits of the authority conferred upon the Governor herein, with due consideration of the policies of the federal government.
  (3) To delegate any authority vested in the Governor under this Article and to provide for the subdelegation of any such authority.
  (4) To cooperate and coordinate with the President and the heads of the departments and agencies of the federal government, and with other appropriate federal officers and agencies, and with the officers and agencies of other states and local units of government in matters pertaining to the emergency management of the State and nation.
  (5) To enter into agreements with the American National Red Cross, Salvation Army, Mennonite Disaster Service, and other disaster relief organizations.
  (6) To make, amend, or rescind mutual aid agreements in accordance with G.S. 166A-19.72.
  (7) To utilize the services, equipment, supplies, and facilities of existing departments, offices, and agencies of the State and of the political subdivisions thereof. The officers and personnel of all such departments, offices, and agencies are required to

Freddie Wayne Huff, II v. NCDPS, et al.
File No. 1:15-CV-599
EXHIBIT 7 to Defendants MSJ

008

Case 1:15-cv-00599-CCE-JEP Document 27-7 Filed 08/01/16 Page 8 of 20



### § 166A-19.15. County and municipal emergency management.

(a) Governing Body of Counties Responsible for Emergency Management. - The governing body of each county is responsible for emergency management within the geographical limits of such county. All emergency management efforts within the county will be coordinated by the county, including activities of the municipalities within the county.

(b) Counties May Establish and Maintain Emergency Management Agencies. - The governing body of each county is hereby authorized to establish and maintain an emergency management agency for the purposes contained in G.S. 166A-19.1. The governing body of each county which establishes an emergency management agency pursuant to this authorization shall appoint a coordinator who will have a direct responsibility for the organization, administration, and operation of the county program and will be subject to the direction and guidance of such governing body. In the event that any county fails to establish an emergency management agency, and the Governor, in the Governor's discretion, determines that a need exists for such an emergency management agency, then the Governor is hereby empowered to establish an emergency management agency within that county.

(c) Municipalities May Establish and Maintain Emergency Management Agencies. - All incorporated municipalities are authorized to establish and maintain emergency management agencies subject to coordination by the county.

(d) Joint Agencies Authorized. - Counties and incorporated municipalities are authorized to form joint emergency management agencies composed of a county and one or more municipalities within the county's borders, between two or more counties, or between two or more counties and one or more municipalities within the borders of those counties.

(e) Local Appropriations Authorized. - Each county and incorporated municipality in this State is authorized to make appropriations for the purposes of this Article and to fund them by levy of property taxes pursuant to G.S. 153A-149 and G.S. 160A-209 and by the allocation of other revenues, use of which is not otherwise restricted by law.

(f) Additional Powers. - In carrying out the provisions of this Article each political subdivision is authorized to do the following:

(1) To appropriate and expend funds, make contracts, obtain and distribute equipment, materials, and supplies for emergency management purposes and to provide for the health and safety of persons and property, including emergency assistance, consistent with this Article.

(2) To direct and coordinate the development of emergency management plans and programs in accordance with the policies and standards set by the Division, consistent with federal and State laws and regulations.

(3) To assign and make available all available resources for emergency management purposes for service within or outside of the physical limits of the subdivision.

(4) To delegate powers in a local state of emergency declared pursuant to G.S. 166A-19.22.

(5) To coordinate the voluntary registration of functionally and medically fragile persons in need of assistance during an emergency either through a registry established by this subdivision or by the State. All records, data, information, correspondence, and communications relating to the registration of persons with special needs or of functionally and medically fragile persons obtained pursuant to this subdivision are confidential and are not a public record pursuant to G.S. 132-1 or any other applicable statute, except that this information shall be available to emergency response agencies, as determined by the local emergency management director. This information shall be used only for the purposes set forth in this subdivision.

(g) County Eligibility for State and Federal Financial Assistance. - Each county which establishes an emergency management agency pursuant to State standards and which meets requirements for local plans and programs may be eligible to receive State and federal financial

Freddie Wayne Huff, II v. NCDPS, et al.
File No. 1:15-CV-599
EXHIBIT 7 to Defendants MSJ

009

Case 1:15-cv-00599-CCE-JEP Document 27-7 Filed 08/01/16 Page 9 of 20

assistance, including State and federal funding appropriated for emergency management planning and preparedness, and for the maintenance and operation of a county emergency management program. Such financial assistance is subject to an appropriation being made for this purpose. Where the appropriation does not allocate appropriated funds among counties, the amount allocated to each county shall be determined annually by the Division. The size of this allocation shall be based in part on the degree to which local plans and programs meet State standards and requirements promulgated by the Division, including those relating to professional competencies of local emergency management personnel. However, in making an allocation determination, the Division shall, where appropriate, take into account the fact that a particular county may lack sufficient resources to meet the standards and requirements promulgated by the Division. (1951, c. 1016, s. 6; 1953, c. 1099, s. 4; 1957, c. 950, s. 2; 1959, c. 337, s. 5; 1973, c. 620, s. 9; 1975, c. 734, ss. 12, 14, 16; 1977, c. 848, s. 2; 1979, 2nd Sess., c. 1310, s. 2; 1995, c. 509, ss. 126, 127; 2009-196, s. 2; 2009-225, s. 2; 2012-12, s. 1(b).)

§ 166A-19.16: Reserved for future codification purposes.

§ 166A-19.17: Reserved for future codification purposes.

§ 166A-19.18: Reserved for future codification purposes.

§ 166A-19.19: Reserved for future codification purposes.

Part 4. Declarations of State of Emergency.

### § 166A-19.20. Gubernatorial or legislative declaration of state of emergency.

(a) Declaration. - A state of emergency may be declared by the Governor or by a resolution of the General Assembly, if either of these finds that an emergency exists.

(b) Emergency Area. - An executive order or resolution declaring a state of emergency shall include a definition of the area constituting the emergency area.

(c) Expiration of States of Emergency. - A state of emergency declared pursuant to this section shall expire when it is rescinded by the authority that issued it.

(d) Exercise of Powers Not Contingent on Declaration of Disaster Type. - Once a state of emergency has been declared pursuant to this section, the fact that a declaration of disaster type has not been issued shall not preclude the exercise of powers otherwise conferred during a state of emergency. (1951, c. 1016, s. 4; 1955, c. 387, s. 4; 1959, c. 284, s. 2; c. 337, s. 4; 1975, c. 734, ss. 11, 14; 1977, c. 848, s. 2; 1979, 2nd Sess., c. 1310, s. 2; 1993, c. 321, s. 181(a); 1995, c. 509, s. 125; 2001-214, s. 3; 2011-145, s. 19.1(g); 2011-183, s. 127(c); 2012-12, s. 1(b).)

### § 166A-19.21. Gubernatorial disaster declaration.

(a) Preliminary Damage Assessment. - When a state of emergency is declared pursuant to G.S. 166A-19.20, the Secretary shall provide the Governor and the General Assembly with a preliminary damage assessment as soon as the assessment is available.

(b) Declaration of Disaster. - Upon receipt of a preliminary damage assessment, the Governor is authorized to issue a disaster declaration declaring the impact or anticipated impact of the emergency to constitute a disaster of one of the following types:

    (1) Type I disaster. - A Type I disaster may be declared by the Governor prior to, and independently of, any action taken by the Small Business Administration, the Federal Emergency Management Agency, or any other federal agency, if all of the following criteria are met:

        a. A local state of emergency has been declared pursuant to G.S. 166A-19.22 and a written copy of the declaration has been forwarded to the Governor.

        b. The preliminary damage assessment meets or exceeds the criteria established for the Small Business Administration Disaster Loan Program pursuant to 13

Freddie Wayne Huff, II v. NCDPS, et al.
File No. 1:15-CV-599
EXHIBIT 7 to Defendants MSJ
Case 1:15-cv-00599-CCE-JEP Document 27-7 Filed 08/01/16 Page 10 of 20

010

### ARTICLE II. EMERGENCY MANAGEMENT AGENCY

Sec. 9-16. Definitions.
Sec. 9-17. Created.
Sec. 9-18. Director—Position created; appointment; salary.
Sec. 9-19. Same—Authority of director.
Sec. 9-20. Same—Duties of director.
Sec. 9-21. Deputy directors.
Sec. 9-22. County to provide office space.
Sec. 9-23. Advisory council, membership, appointment, duties.
Sec. 9-24. Budget.
Secs. 9-25—9-35. Reserved.



## Sec. 9-16. Definitions.

For the purposes of this article, the following terms are defined as follows:

*Emergency management.* Those measures taken by the populace and governments at federal, state, and local levels to minimize the adverse effect of any type disaster, which include the never-ending preparedness cycle of prevention, mitigation, warning, movement, shelter, emergency assistance and recovery.

*Political subdivision.* Davidson County and the incorporated cities of Denton, Lexington, and Thomasville, North Carolina.

(Code 1971, § 9-17)
**Cross reference**— *Definitions and rules of construction generally, § 1-2.*

## Sec. 9-17. Created.

There is hereby created an agency to be known as the Davidson County Emergency Management Agency.

(Code 1971, § 9-18)
*State law reference— Authority to establish local emergency management agencies, G.S. § 166A-7(b).*

## Sec. 9-18. Director—Position created; appointment; salary.

There is hereby created the position of Davidson County Director of Emergency Management, who shall be the head of the emergency management agency and shall be a full-time paid administrative officer appointed at the will of the county board of commissioners. His salary shall be fixed by the county board of commissioners, subject to the approval of the governing bodies of the other political subdivisions involved.

https://library.municode.com/print.aspx?h=&clientID=11161&HTMRequest=https%3a%2f... 7/1/2014

Freddie Wayne Huff, II v. NCDPS, et al.          011
File No. 1:15-CV-599
EXHIBIT 7 to Defendants MSJ
Case 1:15-cv-00599-CCE-JEP  Document 27-7  Filed 08/01/16  Page 11 of 20

(Code 1971 § 9-18)

## Sec. 9-19. Same—Authority of director.

Subject to the order and approval of the governor of the state or the mayor, the director shall have authority to assign and make available for duty the employees, property, or equipment of the subdivision relating to fire fighting, engineering, rescue, health, police, transportation, construction, and similar items or services for emergency management purposes within or outside the limits of the county; and no further authority is required from the city council.

(Code 1971 § 9-22)

## Sec. 9-20. Same—Duties of director.

The director shall be the administrative officer of the emergency management agency and shall be responsible to the governing bodies of the political subdivisions within the county for the carrying out of his program of emergency management for this county. He shall coordinate the activities of all organizations for emergency management within the county and shall cooperate with and maintain liaison with emergency management agencies and organizations of the state and federal governments.

(Code 1971, § 9-21)

## Sec. 9-21. Deputy directors.

There shall be deputy directors of emergency management, one (1) of whom shall be appointed by the governing body of each incorporated municipality in the county, who shall serve at the will of the governing body on a volunteer basis without pay.

(Code 1971 § 9-19)

## Sec. 9-22. County to provide office space.

The county shall provide the agency with necessary office space without cost either to the agency or the other political subdivisions.

(Code 1971, § 9-20)

## Sec. 9-23. Advisory council, membership, appointment, duties.

There is hereby created a Davidson County Emergency Management Advisory Council, which shall consist of eight (8) members who shall be appointed by the governing bodies of the following political subdivisions, as follows: Davidson County, three (3) members; Town of Denton, one (1) member; City of Lexington, two (2) members; City of Thomasville, two (2) members. Initially, the county shall appoint two (2) members to serve one-year terms and one (1) member to serve a two-year term; Denton shall appoint one (1) member to serve a two-year term; and Lexington and Thomasville shall each appoint one (1) member to serve a two-year term and one (1) member to serve a one-year term. These terms shall be limited as provided in section 2-171 of this Code. As each appointment shall expire, the governing body of the political subdivision shall appoint members to serve two-year terms. The advisory council shall advise the governing bodies of the political subdivisions and the director on all matters pertaining to emergency management, and the members thereof shall serve without compensation.

Freddie Wayne Huff, II v. NCDPS, et al.
File No. 1:15-CV-599
EXHIBIT 7 to Defendants MSJ
Case 1:15-cv-00599-CCE-JEP   Document 27-7   Filed 08/01/16   Page 12 of 20

012

(Code 1971 § 9-23)

## Sec. 9-24. Budget.

Budgets shall be submitted to the governing bodies of the political subdivisions for their approval, and it is agreed that so long as this agreement shall remain in effect that the city shall contribute twelve (12) percent of the total budget as approved, so that the budget shall be allocated as follows:

|  | Percentage |
|---|---|
| Davidson County ..... | 25 |
| Denton ..... | 1 |
| Lexington ..... | 12 |
| Thomasville ..... | 12 |
| Emergency management matching funds ..... | 50 |

All funds appropriated by the various subdivisions shall be paid to the county and shall be expended under its supervision in accordance with the budget approved and as by law provided.

(Code 1971 § 9-24)

## Secs. 9-25—9-35. Reserved.

Freddie Wayne Huff, II v. NCDPS, et al.
File No. 1:15-CV-599
EXHIBIT 7 to Defendants MSJ

013

Case 1:15-cv-00599-CCE-JEP Document 27-7 Filed 08/01/16 Page 13 of 20

## Chapter 17 POLICE [1]

Sec. 17-1. Composition of departmental organization.
Sec. 17-2. Oath.
Sec. 17-3. Powers and duties of chief of police.
Sec. 17-4. Powers and duties of policemen.
Sec. 17-5. Interference with radio telephone system.
Sec. 17-6. Giving false alarm through radio telephone system.
Sec. 17-7. Enlisting aid in enforcing law; refusal to aid.



### Sec. 17-1. Composition of departmental organization.

The police departmental organization shall be composed of the chief of police and such officers and number of patrolmen as the city council may deem necessary for the good government of the city, and such temporary patrolmen as the city council may appoint for special purposes or in emergencies.

(Code 1971, § 23-1)

### Sec. 17-2. Oath.

Before entering upon the duties of their respective offices, each policemen shall take an oath that he will faithfully and courageously perform the duties of his office and obey the regulations of the city council and enforce, to the best of his ability, the laws of the land and the ordinances of the city.

(Code 1971, § 23-2)

### Sec. 17-3. Powers and duties of chief of police.

The police department shall be headed by the chief of police, who shall be responsible for the direction and control of all law enforcement and crime prevention activities and personnel. The chief of police shall be the general custodian of peace and safety of the city, and shall be charged with the apprehension, arrest and bringing before the proper courts of any offender, and to these ends, he shall have power to control all police officers placed under him. The chief of police shall be responsible to the city manager and to the city council for the proper administration of the police department, the enforcement of city ordinances and regulations and for faithfully carrying out such other duties as he may be assigned.

(Code 1971, § 23-4)

Cross reference— City officers and employees generally, § 2-46 et seq.

### Sec. 17-4. Powers and duties of policemen.

https://library.municode.com/print.aspx?h=&clientID=11161&HTMRequest=https%3a%2f... 7/1/2014

Freddie Wayne Huff, II v. NCDPS, et al. 014
File No. 1:15-CV-599
EXHIBIT 7 to Defendants MSJ
Case 1:15-cv-00599-CCE-JEP  Document 27-7  Filed 08/01/16  Page 14 of 20

As a peace officer, a policemen shall have within the corporate limits of the city all of the powers invested in law enforcement officers by statute or common law. He shall also have power to serve all civil and criminal process that may be directed to him by any officer of the general court of justice and may enforce the ordinances and regulations of the city as the council may direct.

(Code 1971 § 23-5)
Cross reference— City officers and employees generally, § 2-46 et seq.
State law reference— Similar provisions, G.S. § 160A-285.

### Sec. 17-5. Interference with radio telephone system.

It shall be unlawful for any person to interfere with, damage, deface, remove or injure any part or portion of the police radio telephone system of the city. Any person violating this section shall be deemed guilty of a misdemeanor.

(Code 1971 § 23-9)

### Sec. 17-6. Giving false alarm through radio telephone system.

It shall be unlawful for any person to transmit through the police radio telephone system of the city any false report or alarm, and any other person sending in such a false report or alarm, or aiding, encouraging or inducing the same, shall be deemed guilty of a misdemeanor.

(Code 1971 § 23-10)

### Sec. 17-7. Enlisting aid in enforcing law; refusal to aid.

The officers of the police department shall have authority, if resisted in the execution of their official duties, to summon a sufficient number of persons to aid them in enforcing the law. If any person so summoned shall refuse to assist, the officers shall report the name of such person to the chief of police, and such person shall be guilty of a misdemeanor.

(Code 1971 § 23-11)
State law reference— Aiding police officers, G.S. § 15A-405

FOOTNOTE(S):
--- (1) ---
Cross reference— General penalty for Code violations, § 1-12; offenses and miscellaneous provisions, Ch 14, traffic, Ch 20. (Back)
State Law reference— Law enforcement, G.S. §§ 160A-281—160A-289. (Back)

Freddie Wayne Huff, II v. NCDPS, et al.
File No. 1:15-CV-599
EXHIBIT 7 to Defendants MSJ
Case 1:15-cv-00599-CCE-JEP Document 27-7 Filed 08/01/16 Page 15 of 20
015

## SECTION .0300 - LOCAL EMERGENCY MANAGEMENT

### 14B NCAC 03 .0301 LOCAL EMERGENCY MANAGEMENT

(a) The governing body of each county is responsible for emergency management within the geographical limits of such county. All emergency management efforts within the county will be coordinated by the county, including activities of the municipalities within the county.

(b) All incorporated municipalities are authorized to establish and maintain emergency management agencies subject to coordination by the county. Joint agencies composed of a county and one or more municipalities within its borders may be formed.

(c) Each county and incorporated municipality in this State is authorized to make appropriations for the purposes of emergency management and to fund them by levy of property taxes and by the allocation of other revenues, whose use is not otherwise restricted by law.

(d) Each county which establishes an emergency management agency pursuant to state standards and which meets requirements for local plans and programs may be eligible to receive financial assistance. Such financial assistance for the maintenance and operation of a county emergency management program is contingent on the development and maintenance of operations plans to deal with both peace-time and war-related emergencies. Procedures and requirements for this assistance are outlined in the manuals listed in Rule .0201 of this Chapter.

*History Note:* *Authority G.S. 166A-5; 166A-7; 166A-9;*
*Eff. December 1, 1979;*
*Amended Eff. July 1, 1983;*
*Transferred from 14A NCAC 04 .0301 Eff. June 1, 2013.*



Freddie Wayne Huff, II v. NCDPS, et al.
File No. 1:15-CV-599
EXHIBIT 7 to Defendants MSJ



## AFFIDAVIT OF MICHAEL SPRAYBERRY

1. I am Michael Sprayberry, Director of the Emergency Management Section of the North Carolina Department of Public Safety.

2. I am not an infant or incompetent. The statements contained herein are made of my own knowledge unless stated to be upon information and belief, and as to those matters and things I believe them to be true.

3. As Director of Emergency Management, I am responsible, in pertinent part, for the coordination of the activities of all State agencies for emergency management within the State, including planning, organizing, staffing, equipping, training, testing, and activating and managing the State Emergency Response Team and emergency management programs; for promulgation of standards and requirements for local plans and programs consistent with federal and State laws and regulations, determination of eligibility for State financial assistance provided for in G.S. 166A-19.15 and provision of technical assistance to local governments and for administration of federal and State grant funds provided for emergency management purposes, including those funds provided for planning and preparedness activities by emergency management agencies.

4. I have read the provisions of G.S. 126-5(a)(2)d which provides that the State Personnel Act applies to employees of "Local emergency management agencies that receive federal grant-in-aid funds.

5. In order to be eligible to receive federal grant-in-aid funds, a "local emergency management agency must be established pursuant to G.S. 166A-19.15 and satisfy the criteria of 14B NCAC 03.0301(d).

6. G.S. 166A-19.15 provides, in pertinent part, that each county which establishes an emergency management agency pursuant to State standards and which meets requirements for

Freddie Wayne Huff, II v. NCDPS, et al.  017
File No. 1:15-CV-599
EXHIBIT 7 to Defendants MSJ
Case 1:15-cv-00599-CCE-JEP   Document 27-7   Filed 08/01/16   Page 17 of 20

local plans and programs may be eligible to receive State and federal financial assistance, including State and federal funding appropriated for emergency management planning and preparedness, and for the maintenance and operation of a county emergency management program.

7. 14B NCAC 03.0301(d) provides as follows:

> (d) Each county which establishes an emergency management agency pursuant to state standards and which meets requirements for local plans and programs may be eligible to receive financial assistance. Such financial assistance for the maintenance and operation of a county emergency management program is contingent on the development and maintenance of operations plans to deal with both peace-time and war-related emergencies. Procedures and requirements for this assistance are outlined in the manuals listed in Rule .0201 of this Chapter

8. The only local emergency management agency in Davidson County that is eligible to receive or that receives federal Emergency Management Performance Grant funds is Davidson County Emergency Services. Lexington Police Department is not a division of Davidson County Emergency Services, is not a local emergency management agency and does not receive Emergency Management Performance Grant funds. Accordingly, Lexington Police Officers are not employees of a "local emergency management agency."

This the 7th day of November, 2014. _____

           Michael Sprayberry
           Director
           Emergency Management Section
           North Carolina Department of Public Safety
           4701 MSC
           Raleigh, North Carolina 27699-4701

STATE OF NORTH CAROLINA
COUNTY OF WAKE

Sworn to and subscribed before me
the 7th day of November, 2014.

_____
Notary Public

My commission expires: 12-10-2015 .



Freddie Wayne Huff, II v. NCDPS, et al.
File No. 1:15-CV-599
EXHIBIT 7 to Defendants MSJ

018

Case 1:15-cv-00599-CCE-JEP Document 27-7 Filed 08/01/16 Page 18 of 20

| STATE OF NORTH CAROLINA | | IN THE OFFICE OF |
|---|---|---|
| | | ADMINISTRATIVE HEARINGS |
| COUNTY OF DAVIDSON | | 14 CPS 03402 |

| | |
|---|---|
| Freddie Wayne Huff, II | ) |
| | ) |
| Petitioner; | ) |
| | ) |
| | ) AFFIDAVIT OF |
| v. | ) Alton Hanes |
| | ) |
| | ) |
| N.C. Dept. of Public Safety, | ) |
| | ) |
| Respondent. | ) |

**RESPONDENT'S EXHIBIT F**

Alton Hanes, being duly sworn, deposes and says:

1. I am Alton Hanes, Davidson County Emergency Management Coordinator. I have been employed with Davidson County for 20 years.

2. I am not an infant or incompetent. The statements contained herein are made of my own knowledge unless stated to be upon information and belief, and as to those matters and things I believe them to be true.

3. As the Davidson County Emergency Management Coordinator, I am responsible for the coordination of all emergency management activities within Davidson County. Those activities include, but are not limited to the following: Scenario Planning, preparedness exercises, public education, hazard mitigation, search and rescue, recovery, natural disasters, technological disasters, compiling damage assessments, initiating requests for State and Federal disaster assistance funds, and coordinating delivery of relief supplies. Additionally, Davidson County Emergency Management may respond on scene as deemed appropriate to serve as a liaison between the incident commander and outside agencies.

4. Davidson County Emergency Management is a division of Davidson County Emergency Services which is headed by Larry James, Emergency Services Director. Davidson County Emergency Services is divided into three divisions: Emergency Medical Services, Fire Marshall's Office and Emergency Management.

5. Davidson County Emergency Services has over one hundred employees and serves a population of over 162,000.

6. Lexington, North Carolina is a city located in Davidson County, North Carolina.

Freddie Wayne Huff, II v. NCDPS, et al.  019
File No. 1:15-CV-599
EXHIBIT 7 to Defendants MSJ
Case 1:15-cv-00599-CCE-JEP  Document 27-7  Filed 08/01/16  Page 19 of 20

7. The city of Lexington North Carolina Police Department is not a division of Davidson County Emergency Services. In the event of an emergency within Davidson County, I am able to call upon local law enforcement, fire, rescue, and other entities to assist with the control of the emergency; however, none of the local entities are considered emergency management entities. During such times as local entities may be utilized, the respective members and employees of those entities remain employees of the locality, and not of the Davidson County Emergency Services.

8. During an emergency, one city of Lexington employee may be designated the local emergency management representative. That employee is the City of Lexington Fire Chief.

Further the affiant sayeth not.

This the 12 day of August, 2014

_____
Alton Hanes

Sworn to and subscribed before me, this the 12th day of August, 2014.

_____
Notary Public

LYNN F WILSON
Notary Public
Davidson County
State of North Carolina
My Commission Expires 6-19-2017

My commission expires: June 19, 2017.

Freddie Wayne Huff, II v. NCDPS, et al.
File No. 1:15-CV-599
EXHIBIT 7 to Defendants MSJ

020

Case 1:15-cv-00599-CCE-JEP   Document 27-7   Filed 08/01/16   Page 20 of 20